**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF NEBRASKA**

| | |
|---|---|
| TARA EVANS, as Personal Representative for the ESTATE OF MARY I. WILSON, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHSIDE HEALTHCARE, INC. d/b/a OMAHA NURSING AND REHABILITATION CENTER, GATEWAY HEALTHCARE INC., ENSIGN SERVICES, INC., AND ENSIGN GROUP, INC., and JOHN DOES 1,<br><br>Defendants. | Case No: 8:22-cv-423<br><br><br><br><br><br>COMPLAINT |

Plaintiff, Tara Evans, Personal Representative of the Estate of Mary I. Wilson, Deceased, states and alleges as follows:

PRELIMINARY STATEMENT

1.      This is a professional and medical malpractice civil action to recover damages for Plaintiff Mary I. Wilson's personal injuries and wrongful death arising as a direct and proximate result of Defendants' alleged negligent acts and omissions.

JURISDICTION AND VENUE

2.      This Court has jurisdiction over the parties of this action because the Plaintiff Decedent was a resident of Hinds County, Mississippi at the time of her death and the Defendant Southside Healthcare, Inc. had a principal place of business in Omaha, Douglas

1

County, Nebraska. All Defendants were transacting business, causing tortious injury and had an interest in, used, or possessed property in Omaha, Douglas County, Nebraska.

3.      This matter is a civil action and the amount in controversy is greater than $75,000.00.

4.      Venue is proper in Douglas County, Nebraska because Plaintiff's injuries occurred in Omaha, Douglas County, Nebraska.

PARTIES

5.      On or about December 12, 2020 to December 22, 2020, Defendant, Southside Healthcare, Inc. ("Southside") operated a skilled nursing facility under the trade name "Omaha Nursing and Rehabilitation Center" located at 4835 South 49th Street, Omaha County, Nebraska.

6.      On or about December 12, 2020 to December 22, 2020, Defendant, Southside was a corporation incorporated pursuant to the laws of the State of Nevada.

7.      On or about December 12, 2020 to December 22, 2020, Southside's principal office was located at 29222 Rancho Viejo Rd., #127, San Juan Capistrano, CA, 92675.

8.      On or about December 12, 2020 to December 22, 2020, Southside's corporate officers were Tara Helenthal (President), Craig Fitch (Secretary), Soon Burnam (Treasurer) and Spencer Burton (Director).

9.      On or about December 12, 2020 to December 22, 2020, Southside was 100% owned by Gateway Healthcare, Inc. ("Gateway").

10.     On or about December 12, 2020 to December 22, 2020, Gateway was a corporation incorporated pursuant to the laws of the State of Nevada.

11.     On or about December 12, 2020 to December 22, 2020, Gateway's principal office was located at 29222 Rancho Viejo Rd #127, San Juan Capistrano, CA, 92675, USA.

2

12.     On or about December 12, 2020 to December 22, 2020, Gateway's corporate officers were Spencer Burton (President), Craig Fitch (Secretary), Soon Burnham (Treasurer), and Barry Port (Director).

13.     On or about December 12, 2020 to December 22, 2020, Gateway was 100% owned by The Ensign Group, Inc ("Ensign").

14.     On or about December 12, 2020 to December 22, 2020, Ensign Services, Inc. ("Ensign Services") was a corporation, incorporated pursuant to the laws of the State of Nevada.

15.     On or about December 12, 2020 to December 22, 2020, Ensign Services' principal office was located at 29222 Rancho Viejo Rd, Ste #127, San Juan Capistrano, CA 92675.

16.     On or about December 12, 2020 to December 22, 2020, Ensign Service's corporate officers were Barry Port (President), Chad Keetch (Secretary), Beverly Wittekind (Treasurer) and Christopher Christensen (Director).

17.     On or about December 12, 2020 to December 22, 2020, Ensign Services was contracted to provide, among other things, information technology, human resources, vendor management, facility management services and medical billing services to Southside.

18.     On or about December 12, 2020 to December 22, 2020, The Ensign Group, Inc. ("Ensign") was a corporation, incorporated pursuant to the laws of the State of Delaware.

19.     On or about December 12, 2020 to December 22, 2020, Ensign's principal office was located at 29222 Rancho Viejo Rd, Ste #127, San Juan Capistrano, CA 92675.

20.     On or about December 12, 2020 to December 22, 2020, Ensign's corporate officers were Spencer Burton (President), Chad Keetch (Secretary), Suzanne Snapper (Treasurer/Director), Ann Blouin (Director),

3

Christopher Christensen (Director), Lee Daniels (Director), Barry Port (Director), Daren Shaw (Director), and Barry Smith (Director).

21.     On or about December 12, 2020 to December 22, 2020, Southside, Gateway and Ensign were owners and operators of Omaha Nursing and Rehabilitation Center.

22.     Defendant John Doe 1 (whose real name is unknown) was an owner, manager, employee or temporary employee hired by Defendants to provide skilled nursing care and services at Omaha Nursing and Rehabilitation Center at all relevant times.

23.     On or about December 12, 2020 to December 22, 2020, Mary I. Wilson was a resident of the facility located at 4835 South 49th Street, Omaha County, Nebraska ("Facility").

24.     On December 10, 2021, after proceedings duly had and taken in the County Court of Hinds County, Mississippi, the Plaintiff was duly appointed by Order of that Court, Personal Representative of the Estate of Mary I. Wilson, and the Plaintiff thereafter qualified, thereupon became, and is the duly appointed, qualified and acting Personal Representative of the Estate of Mary I. Wilson.

25.     Mary I. Wilson left surviving as her heirs-at-law her daughter, Tara Evans and her sons, JonVincent Bell and Malcolm Wilson. This action is brought by the Plaintiff, as Personal Representative on behalf of the estate and for the exclusive benefit of such heirs at law.

FACTS COMMON TO ALL THEORIES PLED

26.     Mary I. Wilson was a resident of the Facility during the time frame of December 12, 2020 to December 22, 2020.

27.     Defendants were aware of Ms. Wilson's needs and claimed understanding of the care she required when Ms. Wilson was admitted.

28.     Defendants represented to Ms. Wilson and her family that they could adequately provide for her needs.

4

29.     Defendants represented to the public that they would furnish skilled nursing treatment, care and attention to patients for a fee.

30.     Defendants assumed a duty of exercising reasonable care towards its patients in the rendering of its services.

31.     Defendants owned, operated and/or controlled, either directly or through the agency of each other and/or other diverse subalterns, agents, subsidiaries, servants or employees, the operation, planning, management, and quality control of the Facility.

32.     Employees of Southside were subject to rules and expectations set by Gateway and compliance with these rules and expectations was determined by Gateway following their "audits."

33.     The authority exercised by Defendants over the Facility included, but is not limited to, hiring, training, and assignment of skilled nursing staff; developing and implementing policy and procedures documents; federal, state, Medicare and Medicaid reimbursement; quality care assessment and compliance, licensure and certification; financial accounting control and marketing of Facility to the general public including Plaintiff.

34.     The authority exercised by the Defendants over the Facility included, but was not limited to, control of the marketing, human resources management, training, staffing, creation and implementation of Policy and Procedure Manuals used by the Facility, quality care assessment and compliance, and licensure and certification of its staff and contractors.

35.     The Defendants operated a joint venture for the purpose of streamlining and furthering their similar business interest, as all entities were ultimately controlled by the same corporation.

36.     Defendants had an express or implied agreement to engage in a business activity.

37.     Defendants had a mutual interest in the profits or benefits of the business activity.

38.     Defendants had equal authority to control the performance of the business activity.

39.     At all relevant times, Defendants were acting within the ordinary course of the business of the joint venture.

40.     Because Defendants were engaged in a joint venture before and throughout Plaintiff's residency at the Facility, the acts and omissions of each participant in the common venture are imputable to all other participants.

41.     The Defendants ignored and failed to diagnose Plaintiff's actual injuries and conditions and treated Plaintiff for conditions for which they could be reimbursed regardless of the need for treatment.

42.     The actions of the Defendants and each of their servants, agents and employees as set forth herein are imputed to each of the Defendants, jointly and severally.

43.     On or about December 12, 2020 to December 22, 2020, Plaintiff was 90 years old.

44.     On or about December 12, 2020 to December 22, 2020, she suffered from paraplegia, chronic kidney disease, hypothyroidism, paroxysmal atrial fibrillation, and muscle weakness.

45.     Plaintiff had a life expectancy of 5 years.

46.     Defendants had a duty to use due care in their treatment of Plaintiff.

47.     Defendants failed to use due care in their treatment of Plaintiff.

48.     Defendants were obliged to use ordinary and reasonable care in operating and managing the Facility.

49.     Defendants failed to use ordinary and reasonable care in operating and managing the Facility.

50.     Defendants' failure to use due care in their treatment of Plaintiff proximately caused Plaintiff to suffer injuries prior to her death.

51.     Defendants' failure to use due care in their treatment of Plaintiff proximately caused Plaintiff's death.

FIRST CAUSE OF ACTION – NEGLIGENCE

52.     At all relevant times, Defendants were negligent and failed to act as a reasonably careful skilled nursing facility would under similar circumstances.

53.     The negligence of the Defendants includes but is not limited to, the following acts and omissions:

      a.    Failure to conduct adequate and appropriate assessments;

      b.    Failure to develop and implement a comprehensive care plan;

      c.    Failure to provide a safe environment;

      d.    Failure to prevent loss of quality of life;

      e.    Failure to prevent delay of treatment;

      f.    Failure to implement proper interventions to prevent falls and skin breakdown;

      g.    Failure to timely and properly notify Ms. Wilson's responsible person and physician of significant changes in her condition;

      h.    Failure to assess treatment interventions and properly update Ms. Wilson's care plan;

i.      Failure to provide properly trained staff in sufficient numbers;

j.      Failure to supervise staff;

k.      Failure to adequately manage the Facility;

l.      Failure to provide and maintain a proper number of staff;

m.      Failure to adequately instruct, train and supervise employees; Failure to provide Plaintiff with the necessary care and services to attain, and maintain, the highest practicable physical, mental and psychological well-being;

n.      Failure to require strict compliance with the Regulations of the Nebraska Department of Health and Human Services and Nebraska State Laws;

o.      Failure to maintain Ms. Wilson's medical records in accordance with standards of professional practice;

p.      Failure to follow the Facility's own policies and procedures concerning proper care and treatment of residents;

q.      Failure to require strict compliance with federal regulations concerning care and treatment of residents in a skilled nursing facility;

r.      Failure to recognize and treat injuries and/or illnesses sustained by Plaintiff in a timely and appropriate manner;

s.      Failure to administer care to prevent avoidable falls, fractures, bruising and skin breakdown due to insufficient numbers of front-line staff; and

8

t.     Negligently pushing Ms. Wilson off her bed during a hurried improper transfer, causing Ms. Wilson to fall from the bed to the hard floor.

54.    As a direct and proximate result of the aforementioned negligence, Plaintiff suffered painful and unnecessary injuries including, but not limited to the following:

a.    Left distal femur fracture;

b.    Avoidable decubitus ulcers/injuries;

c.    Contusions;

d.    Abrasions;

e.    Dehydration;

f.    Malnutrition;

g.    Anemia;

h.    Low Blood Pressure;

i.    Fall;

j.    Delayed treatment following fall;

k.    Delayed treatment for left distal femur fracture; and

l.    Death.

55.    As a direct and proximate result of the Defendants' negligence, Plaintiff required medical treatment and incurred medical expenses in an amount to be proven at trial.

56.    As a direct and proximate cause of the joint and several negligence of Defendants and/or each of them as set forth above, Plaintiff suffered:

a.    Physical pain;

b.      Physical suffering;

c.      Mental pain;

d.      Mental suffering;

e.      Inconvenience;

f.      Humiliation;

g.      Permanent disability; and

h.      Fear of death.

57.     In the alternative, the Defendants' joint and several negligence as set forth above was a substantial factor in causing Plaintiff's damages set forth above.

58.     Plaintiff, during her lifetime, had a cause of action against the Defendants for her damages, set forth above, which she experienced before her death and such cause of action survives her death and inures to the benefit of her estate.

59.     Plaintiff was 90 years of age on or about December 12, 2020 to December 22, 2020 and had a life expectancy of 5 years.

60.     For all times relevant, the aforesaid quality of care deficiencies and the deteriorations suffered by Plaintiff, resulted from Defendants' decisions to set low staffing levels to increase revenue from their activities despite the knowledge that harm to the residents, including, Plaintiff, was likely to occur.

61.     The failure of care and the losses set forth herein are a direct and proximate result of Defendants' decisions to direct facility income to related entities despite the residents' care needs such that the events set forth herein were inevitable and foreseeable.

62.     Plaintiff's death occurred as a direct and proximate result of Defendant's negligence.

10

SECOND CAUSE OF ACTION – PROFESSIONAL NEGLIGENCE

63.    At all relevant times, Defendants were negligent and failed to possess and use the skill care, and knowledge ordinarily possessed and used under like circumstances by other nursing homes in good standing and engaged in similar practice in the same or similar localities.

64.    The negligence of the Defendant includes, but is not limited to, the following acts and omissions:

a.    Failure to conduct adequate and appropriate assessments;

b.    Failure to develop and implement a comprehensive care plan;

c.    Failure to provide a safe environment;

d.    Failure to prevent loss of quality of life;

e.    Failure to prevent delay of treatment;

f.    Failure to implement proper interventions to prevent falls and skin breakdown;

g.    Failure to timely and properly notify Ms. Wilson's responsible person of significant changes in her condition;

h.    Failure to assess treatment interventions and properly update Ms. Wilson's care plan;

i.    Failure to provide properly trained staff in sufficient numbers;

j.    Failure to supervise staff;

k.    Failure to adequately manage the Facility;

l.    Failure to provide and maintain a proper number of staff;

m.    Failure to adequately instruct, train and supervise employees; Failure to provide Plaintiff with the necessary

care and services to attain, and maintain, the highest practicable physical, mental and psychological well-being;

n.      Failure to require strict compliance with the Regulations of the Nebraska Department of Health and Human Services and Nebraska State Laws;

o.      Failure to maintain Ms. Wilson's medical records in accordance with standards of professional practice;

p.      Failure to follow the Facility's own policies and procedures concerning proper care and treatment of residents;

q.      Failure to require strict compliance with federal regulations concerning care and treatment of residents in a skilled nursing facility;

r.      Failure to recognize and treat injuries and/or illnesses sustained by Plaintiff in a timely and appropriate manner;

s.      Failure to administer care to prevent avoidable falls, fractures, bruising and skin breakdown due to insufficient numbers of front-line staff; and

t.      Negligently pushing Ms. Wilson off her bed during a hurried improper transfer, causing Ms. Wilson to fall from the bed to the hard floor.

65.     As a direct and proximate result of the Defendants negligence, the applicable standard of care was breached.

66.     As a result of understaffing, the Defendants saved substantial monies during the time in which Plaintiff resided there in an amount to be determined during discovery which was retained by them as profits to the detriment of facility residents.

67.     Plaintiff demands a jury trial on all causes of action.

WHEREFORE, Plaintiff prays for the judgment on this cause of action against Defendants and each of them jointly and severally for such damages as are reasonable, with interest thereon, together with costs and attorney fees and such other relief as may be allowed by the laws of the State of Nebraska.

## THIRD CAUSE OF ACTION – WRONGFUL DEATH

68.    The joint and several negligence of the Defendants and each of them, as set forth above, was the direct and proximate cause of the wrongful death of Mary I. Wilson on July 22, 2021, and her surviving adult children have been deprived of the comfort of her society and companionship, as well as other pleasures and rights having a pecuniary value, which attend to immediate family relationships.

69.    In the alternative, the joint and several negligence of the Defendants and each of them as set forth above constituted a substantial factor in causing the death of Plaintiff on July 22, 2021, and her surviving adult children have been deprived of the comfort of her society and companionship, as well as other pleasures and rights having a pecuniary value, which attend to immediate family relationships.

70.    As a direct and proximate result of the joint and several negligence of the Defendants and each of them as set forth above, Plaintiff's estate incurred fair and reasonable expenses for her funeral and burial; and/or the joint and several negligence of the Defendants and each of them, as set forth above, constituted a substantial factor in causing Decedent's estate to incur fair and reasonable expenses for her funeral and burial.

WHEREFORE, Plaintiff prays for judgment on this cause of action for the wrongful death of the decedent against Defendants and each of them jointly and severally for such damages as are reasonable, with interest thereon, and funeral expenses together with Plaintiff's costs and attorney fees and for such other relief as may be allowed by the laws of the State of Nebraska.

13

JURY DEMAND

71.     Plaintiff incorporates all previous paragraphs herein.

72.     Plaintiff hereby requests a trial by jury of all theories of recovery alleged in the Complaint.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants, and each of them, for all of the general and special damages as more specifically set forth in the previous paragraphs, for costs, for pre-judgment interest, post-judgment interests, and for such other and further, and different relief as is equitable.

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

DATED:        December 8, 2022.


s/ Shayla M. Reed_____
Bar Number: 21771
Attorney for Plaintiff
Reed Law Offices PC LLO
3032 South 87th Street
Omaha, Nebraska 68124
Telephone: (402) 933-0588
Fax:  (402) 263-5077
Email: reed@reedlawomaha.com

14